## RECOVERY OF MONEY ILLEGALLY PAID TO COUNCILMEN FOR SERVICES.

Circuit Court of Jefferson County.

WALKER ET AL V. VILLAGE OF DILLONVALE, ON RELATION OF THOMAS McCABE.

Decided, May Term, 1908.

*Office and Officer—Compensation of Councilmen—Where Illegally Paid May be Recovered Back—Action for, by Tax-payer—Parties—Community of Interest—Municipalities—Section 197 of the Municipal Code, and 1536-667-668 and 5008, Revised Statutes.*

1. Councilmen of a municipality are not entitled to receive compensation for their services until the same is authorized by ordinance, and money received by them therefor prior to the passage of such ordinance may be recovered back in a proper action.

2. Where there is no statute providing for recovering back money so paid to councilmen, a suit in equity may be prosecuted for that purpose by any tax-payer on behalf of the municipality or on behalf of himself and other tax-payers, and in such suit all the councilmen so illegally receiving money may be joined in one action to prevent a multiplicity of suits.

*Erskine & Smith,* for plaintiff in error.
*W. C. Brown,* contra.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.

Error to Jefferson Common Pleas Court.

Harry Walker with five others were elected members of council of the incorporated village of Dillonvale in April, 1905, and went into office in May of that year.

Section 197 of the municipal code passed October 22, 1902, provides:

"Council shall fix the compensation and bonds of all officers, clerks and employes in the village government, except as otherwise provided in this act. All bonds shall be made with sureties subject to the approval of the mayor. The compensation so fixed shall not be increased or diminished during the term for which any officer, clerk or employe may have been elected or

appointed; provided, that members of council may receive as compensation the sum of two dollars for each meeting, not to exceed twenty-four meetings in any one year, and they shall have such other powers as are conferred upon councils of villages by Section 1678 of the Revised Statutes of Ohio.''

In December of 1905, council passed a resolution to pay members of council for meetings theretofore held. The amount was paid to each of them, and this suit was instituted by the village of Dillonvale, on relation of Thomas McCabe, a tax-payer, against each of said parties to recover back the amount so paid, they all being joined in the action. The suit is really one in equity to require them and each of them to pay back into the village treasury said sum of money and for a decree against each of them for said sum which, as claimed, was illegally taken from the village treasury.

The court of common pleas so treated the action and ordered each of the defendants to pay to the clerk of the court the amount received by him, to be turned over by the clerk to the village treasurer for the benefit of the village.

Three questions are made: First, was the money illegally paid to these councilmen? Second, had Thomas McCabe, as a tax-payer, a right to bring and prosecute the suit on behalf of himself, or for the benefit of the village? Third, was the suit properly instituted and prosecuted against all the councilmen in one action?

As to the first question. Council did not fix the compensation of the councilmen until after the performance of the services. It is well settled in this state that where services are performed by a public officer where no compensation is provided for, that he is presumed to perform the services gratuitously, and that he can not recover any compensation for such services.

We have had this section before us before, and we have held that council must fix the compensation before the services are performed or none can be received. The statute says council shall fix the compensation and bonds of all officers. When fix compensation? Clearly before the services are performed. We, therefore, hold the money was illegally paid to these defendants.

The next and important question is: Had McCabe the legal authority to bring the suit? There is no statute authorizing him to bring such suit. There is statutory provision providing that a tax-payer may call upon the solicitor to restrain the paying out of money illegally and, in case the solicitor fails, the tax-payer may bring suit in his own name, but none to recover it back after its illegal payment.

The provisions as to counties (Section 1277, Revised Statutes) and municipalities (1536-667 and 1536-668), are different in this regard. In such case are the people helpless; that is the claim of plaintiffs in error? If that is so, then the law is indeed lame and impotent. If the money is still in the hands of the treasurer then there is relief; if it has left his hand then there is no relief.

It is one of the principal objects of equity to afford relief when there is no remedy at law; and certainly a case of this character affords a striking illustration of this very salutory principle of equity.

Judge Dillon, in his work on Municipal Corporations, goes into this question quite exhaustively. In Section 914 (731) it is said:

"In this country, the right of property holders or taxable inhabitants to resort to equity to restrain municipal corporations and their officers from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the tax-payers—such as making an unauthorized appropriation of the corporate funds, or an illegal or wrongful disposition of the corporate property, or levying and collecting void and illegal taxes and assessments upon real property under circumstances presently to be explained—has, without the aid of statute provision to that effect, been affirmed or recognized in numerous cases in many of the states.

"It is the prevailing, we may now add, almost universal doctrine on this subject. It can, we think, be vindicated upon principle, in view of the nature of the powers exercised by municipal corporations and the necessity of affording easy, direct and adequate preventive relief against their misuse. It is better that those immediately affected by corporate abuses should be armed with the power to interfere directly in their own

names than to compel them to rely upon the action of a distant state officer. The equity jurisdiction may, in such cases, usually rest upon fraud, breach of trust, multiplicity of suits, or the inadequacy of the ordinary remedies at law. It is advisable, in view of its importance, briefly to examine the doctrine above mentioned, and the grounds upon which it rests, in the light of some of the leading judgments of the courts, the better to see its scope, limitations, and application.

"The doctrine of the preceding section is also supported by an analogy supplied by a settled rule of equity applicable to private corporations. In these the ultimate *cestuis que trust* are the stockholders. In municipal corporations the *cestuis que trust* are in a substantial sense the inhabitants embraced within their limits. In each case the corporation, or its governing body, is a trustee. If the governing body of a private corporation is acting *ultra vires* or fraudulently, the corporation is ordinarily the proper party to prevent or redress the wrong by appropriate action or suit in the name of the corporation. But if the directors will not bring such an action, our jurisprudence is not so defective as to leave creditors or shareholders remediless, and either creditors or shareholders may institute the necessary suits to protect their respective rights, making the corporation and the directors defendants. This is a necessary and wholesome doctrine. Why should a different rule apply to a municipal corporation? If the property or funds of such a corporation be illegally or wrongfully interfered with, or its powers be misused, ordinarily the action to prevent or redress the wrong should be brought by and in the name of the corporation. But if the officers of a corporation are parties to the wrong, or if they will not discharge their duty, why may not any inhabitant, and particularly any taxable inhabitant, be allowed to maintain in behalf of all similarly situated a class suit to prevent or avoid the illegal or wrongful act? Such a right is especially necessary in the case of municipal and public corporations, and if it be denied to exist, they are liable to be plundered, and the tax-payers and property owners on whom the loss will eventually fall are without effectual remedy."

In the case of *Newmeyer* v. *Missouri & Mississippi Railroad Company,* 14 American Reports, 394, and in *Russell* v. *Tate,* 20 American State Reports, 193, the rule as enunciated by Judge Dillon is approved and affirmed. In the latter case it is held: "The relief granted may be either injunctive or affirmative." And in the opinion it is said:

"There is no foundation in the authorities for the claim that the power of chancery is only injunctive. It would be a reproach to justice if it were true. In the present case the appropriation was made, the warrant was drawn, and the money paid by the treasurer, before an attorney could have comprehended the situation, and have written the caption of a complaint. Chancery has ample power to prevent further wrong and require reparation for that which has been done."

Many authorities are referred to sustaining the opinion.

The third objection to the preceeding below is, that no action could be brought against all the defendants jointly, but that the suit should have been against each individual councilman. That there was no such community of interest as is required to permit a joint action.

What is such community of interest under the provisions of equity regarding the prevention of multiplicity of suits; must each and all the parties be interested in the identical thing? We think not. There is a community of interest where all the parties are interested in the same subject-matter and where the same facts and rules of law govern them all; and in such case they may all be joined in the same suit, plaintiffs or defendants.

In Pomeroy's Equity Jurisprudence from Section 255 to 260 there is an elaborate discussion of this question, and in Section 260 the learned author says:

"The only community among them is in the questions at issue to be decided by the court; in the mere external fact that all their remedial rights arose at the same time, from the same wrongful act, and depend upon the same questions of law. This sort of community is sufficient, in the opinion of so many and so able courts, to authorize and require the exercise of the equitable jurisdiction, in order to prevent a multiplicity of suits."

This would seem also to be in accordance with Section 5008 of the Revised Statutes.

The judgment of the court of common pleas will be affirmed.